IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

PAUL JEROME TYNER,          :
                           :
       Plaintiff             :
                           :
                           :
     VS.                 :       **1 : 04-CV-156 (WLS)**
                           :
JAMES DONALD, MR. WILLIAMS,  :
MS. BLAYLOCK, MR. PARKER,    :
MR. JACKSON, MR. OLIVER, MR. BURKS,  :
MR. LANIER, AND MR. MATHIS,    :
                           :
                           :
     Defendants.         :

_____

## RECOMMENDATION

Presently pending in this § 1983 action is the defendants' Motion for Summary Judgment. The undersigned notified the plaintiff of the filing of the defendants' motion, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of his receipt of the court's order.

The plaintiff filed this action in October 2004, raising allegations that while he was confined at Calhoun State Prison, the defendants were deliberately indifferent to various threats of harm directed toward the plaintiff and others. Specifically, the plaintiff claims that on October 1, 2004, while he was in protective custody, the defendants "forced a roommate on me", despite his strenuous objections that a roommate put him in fear for his life. The plaintiff further claims that said roommate promptly hit him, starting a series of fights in which he hit and kicked the plaintiff, attempted to cut him with a razor blade and stabbed him in the arm and abdomen with an ink pen. Plaintiff maintains that defendants were aware of these altercations yet refused

to separate the inmates and refused to allow plaintiff to stay in a cell by himself.  The plaintiff seems to argue that any cellmate put him in fear for his life, citing a list of examples of altercations between other inmates confined together in administrative segregation.  The undersigned ordered the defendants to file a Special Report, which could be styled as a motion for summary judgment, on December 21, 2004.  The plaintiff was transferred from Calhoun State Prison to Autry State Prison on January 6, 2005.  The defendants' Special Report/Motion for Summary Judgment was filed on January 27, 2005.

On August 8, 2005, the undersigned issued a recommendation that the defendants' Motion for Summary Judgment, based on allegations that the plaintiff had accumulated three strikes under the PLRA, be denied.  This recommendation was adopted and made the order of the court on September 20, 2005.  The defendants then filed the presently pending motion for summary judgment addressing the merits of plaintiff's claims.

***Standard of review***

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Van T. Junkins & Assoc. v. U.S. Industries, Inc., 736 F.2d 656, 658 (11th Cir. 1984).

As the parties moving for summary judgment, the defendants have the initial burden to

2

demonstrate that no genuine issue of material fact remains in this case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991).  The defendants have supported their summary judgment motion with the affidavit of defendant James Lanier, Warden at Calhoun State Prison during the time period in question, and a statement of undisputed material facts.  The defendants also reference and rely on affidavits and exhibits filed in support of their previously filed Special Report/Motion for Summary Judgment.

### *Official capacity claims*

The defendants argue that insofar as the plaintiff has sued the defendants in their official capacities, his claims for damages are barred by the Eleventh Amendment.  Insofar as the plaintiff brings this action against the defendants in their official capacities, the plaintiff's claims are without merit.  A suit brought against the defendant prison officials in their official capacities is in reality a suit against the state and as such is not cognizable under § 1983.  Will v. Michigan Dep't. of State Police, 491 U.S. 58 (1989).

### *Deliberate indifference claims*

The deliberate indifference standard has both an objective and a subjective component. "First, under the 'objective component', a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citing Hudson v. Macmillian, 503 U.S. 1, 8 (1992)). Secondly, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994).  "Our cases

have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 114 S.Ct. at 1979. "Thus, to survive summary judgment on his section 1983, Eighth Amendment claim, [the plaintiff is] required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). The plaintiff's claims of deliberate indifference focus on two (2) periods of time. First, the plaintiff's claims include allegations that the defendants were deliberately indifferent to the serious risk of harm posed by placing more than one inmate in a cell in administrative segregation or protective custody. Secondly, the plaintiff's claims encompass allegations that the defendants were deliberately indifferent to the risk of harm posed specifically by inmate Hollis Pittman, once he was placed in plaintiff's cell and he began assaulting the plaintiff.

The defendants, by means of Warden Lanier's affidavit and the affidavit of administrative assistant Dedra Edwards, maintain that the plaintiff did not identify inmate Hollis Pittman, the cellmate who allegedly assaulted him, as a threat prior to his placement in plaintiff's cell on October 1, 2004, nor did plaintiff report his concerns to prison officials once inmate Hollis Pittman began assaulting him. Plaintiff had been placed in protective custody on August 13, 2004, after submitting a written request for protection from inmates Willie Thomas, Lamar Seatts, and Rosanno McKeiver. Warden Lanier states that

> [m]y staff did not learn that Inmate Tyner was the alleged victim of
> an assault until he filed a grievance on or about October 8, 2004.

4

> There was no reason for my staff to suspect Inmate Hollis Pittman
> was a threat to Inmate Tyner prior to assigning them to the same
> cell.
>
> An investigation into the alleged stabbing could not substantiate
> Inmate Tyner's allegations.  Inmate Tyner did not request or receive
> medical treatment for the alleged stabbing from an ink pen or the
> alleged cut with a razor blade.  According to the officers' checklist,
> Inmate Tyner never made any of them aware of his alleged fear of
> Inmate Pittman or the alleged assault.

Lanier affidavit at ¶¶ 6, 9.

Dedra Edwards, administrative assistant at Calhoun State Prison, testifies that Inmate Pittman

was placed in the same cell with plaintiff on October 1, 2004, and remained there until October

13, 2004.  Edwards further testifies, based on her review of the plaintiff's institutional file, that

> [a]n investigation into the alleged stabbing by Inmate Pittman could
> not be substantiated.  No medical treatment was requested or given
> for being "stabbed by an ink pen", "cut with a razor blade", or
> anything else.  According to the Segregation/Isolation Checklist an
> officer checked on Inmate Tyner in approximate thirty-minute
> intervals on both days and Inmate Tyner did not report a fight,
> tabbing [sic], or being in fear of his life.  In fact, Sergeant White met
> with Inmate Tyner on October 4, 2004, for a sixty-day review of his
> protective custody status and because he got no complaints from
> Inmate Tyner regarding his custody status, he recommended that he
> stay in protective custody.

Also attached to the defendants' first motion for summary judgment are log sheets, dated

October 4, 2004 through November 14, 2004, wherein officers noted their checks of plaintiff's

cell area.  These notations reflect that during this time period, when checked three (3) times per

day, the plaintiff was generally lying or sitting on his bed.  Additional observation records

apparently indicate the dates and times the segregation areas were observed.

In rebuttal to the defendants' summary judgment showing, the plaintiff argues that the defendants were aware of inmate Pittman's propensity for violence, and he has presented a copy of a disciplinary report for Pittman issued on April 22, 2004 in support of his contentions.  In this disciplinary report, it appears that inmate Pittman was charged with attacking a prison officer during a cell extraction approximately five (5) months prior to his cell assignment with the plaintiff.  The plaintiff argues that *any* cellmate or roommate put him in fear for his life and that he had repeatedly told prison officials of these fears, but that prison officials regularly assigned cellmates to prisoners held in administrative segregation or protective custody as a result of space constraints.

In regard to the actual assaults once Pittman was placed in his cell, the plaintiff argues that various defendant officers were aware of the altercations and both ignored these, refusing to separate the two (2) inmates, and refused plaintiff's requests for medical attention.  In his affidavit submitted in response to the defendants' second summary judgment motion, the plaintiff states that

> Inmate Hollis Pittman was placed in the cell with Plaintiff on October 1, 2004, in spite [sic] Plaintiff stating he didn't want a roommate.  Inmate Pittman spontaneously attacked Plaintiff and they fought.  Fellow prisoners heard the commotion and beat on their door and yelled for the Defendants Parker and Jackson, whom had put inmate Pittman in the room with Plaintiff, to come break up the fight.  It took Defendants approximately 30 minutes to come to the cell.  Inmate Pittman informed Defendant Parker that he and Plaintiff had been fighting and asked to be moved.  The Defendant refused to separate inmate Pittman and Plaintiff.  Plaintiff informed Defendants Burkes and Oliver whom were the third shift officers about the fight and they refused to separate them. . . . On October 2, 2004, Plaintiff informed Defendant Williams, who was the Duty Officer, and Defendant Williams refused to separate them.  On October 4, 2004, inmate Pittman attacked the Plaintiff and stabbed him several times with an ink pen.  Plaintiff informed Defendants

> Mathis and Lanier and they refused to separate them. . . . [the
> defendants] refused to contact and have medical personnel to
> examine inmate Pittman and Plaintiff. . . .  Plaintiff turned in three
> sick call request [sic] and was denied medical treatment. . . . Inmate
> Pittman was moved on October 13, 2004. . . . Plaintiff was finally
> taken to medical on 10-13-2004, and examine and the stabb [sic]
> wounds was still slightly visible on his left arm.

Plaintiff's affidavit at ¶¶ 2-14 (document # 48-1).

Portions of these contentions are supported by the affidavits of two (2) of plaintiff's fellow inmates housed in the adjacent or nearby cells during the relevant time period.  One of these inmates testifies that he heard sounds of fighting coming from plaintiff's cell after defendants placed inmate Pittman in the cell with the plaintiff, that he and another inmate called for officers to respond at least twice, and waited over thirty (30) minutes before the defendant officers Parker and Jackson, and later Oliver and Burks, arrived.  The inmates testify that the officers did not separate Pittman and the plaintiff despite being told of the fighting on multiple occasions.  See attachments to document # 32.

In regard to plaintiff's claims that the defendants were deliberately indifferent to the risk posed by placing *any* inmate in the protective custody cell with the plaintiff, the plaintiff has failed to present sufficient evidence showing that he was both exposed to a substantial risk of serious harm and that the defendants subjectively knew about this risk and knowingly or recklessly ignored the risk.  Farmer; 114 S. Ct. at 1976; Hale, 50 F.3d at 1583.  In response to the defendants' summary judgment showing that they had no subjective knowledge of any substantial risk of serious harm when placing a cellmate with the plaintiff, the plaintiff's only rebuttal evidence is a disciplinary report for inmate Pittman showing that he had assaulted an officer, and his contention that he had told the defendants that he feared for his life with *any*

cellmate.  "[B]efore Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] generally problematic nature."  Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).

However, in regard to the plaintiff's claim that the defendants were deliberately indifferent to the risk posed to the plaintiff *after* inmate Pittman was placed in the same cell, the undersigned finds that the plaintiff has presented sufficient evidence, when viewed in the light most favorable to the plaintiff, upon which a jury could reasonably find that a substantial risk of harm existed, that the defendants were aware of this risk, and that the defendants disregarded this risk.  Plaintiff's affidavit as well as the affidavits of fellow inmates Kenyatta Moffitt and Ulyesse Lassiter, establish that guards were called and made aware of the fighting between Pittman and the plaintiff, and that the defendant guards at times witnessed the fighting, yet did nothing to stop it or to separate the inmates.  A jury could reasonably conclude that the defendants knew of the risk of ongoing harm to the plaintiff, yet "disregarded that risk by failing to take reasonable measures to abate it."  Farmer, 114 S. Ct. at 1984.  The plaintiff has produced his affidavit testimony, as well, that if credited by the factfinder, establishes that the plaintiff suffered physical injuries at the hands of inmate Pittman and that his requests for medical attention were denied by the defendant guards.  The defendants have failed to produce any testimony from the individual defendants as to their knowledge or awareness of the fighting or injuries to the plaintiff, relying instead on the log sheets and affidavits of the prison warden and administrative assistant to argue that they were not aware of any fighting or other risk of harm.  The defendants emphasize that the plaintiff did not identify inmate Pittman as a potential threat prior to his placement into plaintiff's cell.  However,

> [a]lthough relevant, a claimant's "failure to give advance notice [of an attack] is not dispositive".  Thus, an official may not escape liability merely by showing that he did not know the claimant was likely to be assaulted or that an assault would be committed by the specific prisoner who eventually committed the assault.  In other words, [the plaintiff] was not required to show that [the defendants] know "precisely who would attack whom", but only that [the defendants] had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence.

Hale, 50 F.3d at 1583.

The court notes that the plaintiff's allegations surpass claims that the defendants merely failed to prevent an attack, but go further to include claims that the defendants were aware of ongoing attacks and failed to take any action to stop the fighting or separate the inmates.  This larger scope clearly distinguishes the plaintiff's claims from those set out in the cases cited by the defendants in support of their summary judgment motion.  Cf. Newton v. Black, 133 F.3d 301 (5th Cir. 1998)(defendant prison officials were not liable for failing to protect prisoner from attack by fellow inmate; prison guard did not suspect that inmate posed a substantial risk of harm prior to the attack); Prater v. Dahm, 89 F.3d 538 (8th Cir. 1996)(plaintiff did not allege facts from which an inference of substantial risk of harm could be made; plaintiff alleged only that fellow inmate had made threats against him); Pagels v. Morrison, 335 F.3d 736 (8th Cir. 2003) (evidence was insufficient to establish that correctional officer was deliberately indifferent to any serious threat of harm; inmate's letter indicated he was not worried about getting hurt and search of cell did not reveal any further danger).   The undersigned finds that the plaintiff produced sufficient evidence to go to a jury for a determination of whether the defendants were deliberately indifferent.

***Claims against defendant Donald***

9

The defendants argue that the plaintiff makes no specific claim against Commissioner Donald, and that his claims against Donald are merely based upon a theory of vicarious liability. As the defendants point out, the plaintiff does not mention defendant Donald specifically in his complaint, he does not point to any specific act or omission by Donald, and he does not attribute any policy or custom to Donald.  "It is axiomatic, in Section 1983 actions, that liability must be based on something more than a theory of *respondeat superior*."  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  Accordingly, it is the recommendation of the undersigned that defendant Donald be **DISMISSED** as a party herein.

*Conclusion*

Based on the foregoing, it is the recommendation of the undersigned that the defendants' Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**.  It is recommended that defendants' Motion for Summary Judgment be **GRANTED** in regard to: plaintiff's claims brought against the defendants in their official capacities; plaintiff's claims against defendant Donald; and plaintiff's claims that the defendants were deliberately indifferent to a serious risk of substantial harm in placing an inmate in the protective custody cell with the plaintiff.  It is recommended that defendants' Motion for Summary Judgment be **DENIED** in regard to plaintiff's claims that the defendants were deliberately indifferent to a serious risk of harm *after* inmate Pittman was placed in the cell with the plaintiff.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, Chief United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 18th day of August, 2006.

/s/ **_Richard L. Hodge_**
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

asb